Taylor A. Affleck (#12559)
RAY LEGO & ASSOCIATES
1100 East 6600 South, Suite 350
Salt Lake City, Utah 84121
Tel. (801) 269-5639
Fax (801) 269-5641
TAFFLECK@travelers.com

Lisa Szczepanski (*pro hac vice*)
USERY & ASSOCIATES
485 Lexington Avenue, 6th Floor
New York, New York 10017
Tel. (917) 778-6680
Fax (844) 571-3789
LSZCZEPA@travelers.com

Attorneys for Plaintiff,
THE PHOENIX INSURANCE COMPANY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>KINSALE INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:24-cv-00688-DBB-DAO<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

**PLAINTIFF'S MOTION**
**FOR SUMMARY JUDGMENT**

USERY & ASSOCIATES
485 Lexington Avenue, 6th Floor
New York, NY 10017
(917) 778-6680

*Attorneys for Plaintiff*
*The Phoenix Insurance Company*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION AND RELIEF REQUESTED ..... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ..... 2

A. The Policies ..... 2

B. The Subcontract ..... 6

C. The Incident and Underlying Action ..... 8

D. Tenders to Kinsale ..... 9

LEGAL STANDARD ..... 11

A. Summary Judgment ..... 11

B. Duty to Defend ..... 12

ARGUMENT ..... 13

I. GRAMOLL QUALIFIES AS AN ADDITIONAL INSURED UNDER THE KINSALE POLICY ..... 13

II. KINSALE HAS A DUTY TO DEFEND BECAUSE THE UNDERLYING ACTION ASSERTS LIABILITY COVERED BY THE KINSALE POLICY ..... 14

III. THE COVERAGE PROVIDED BY THE PHOENIX POLICY IS EXCESS TO THE COVERAGE PROVIDED BY THE KINSALE POLICY ..... 16

CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Cases**

*Allegis Inv. Servs., LLC v. Arthur J. Gallagher & Co.*,
371 F.Supp.3d 983 (D. Utah 2019) .......... 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 11

*Associated Elec. & Gas Ins. Servs. Ltd. v. American Int'l Group, Inc.*,
166 F.Supp.3d 1248 (D. Utah 2015) .......... 16

*Atlantic Richfield Co. v. Farm Credit Bank of Wichita*,
226 F.3d 1138 (10th Cir. 2000) .......... 11

*Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, 140 P.3d 1210 .......... 12

*Chapman Constr., LC v. Cincinnati Ins. Co.*, No. 2:15-CV-172-DB,
2015 WL 12030093 (D. Utah Sept. 22, 2015) .......... 12

*Cincinnati Ins. Co. v. AMSCO Windows*, 921 F.Supp.2d 1226
(D. Utah 2013), *aff'd,* 593 F. App'x 802 (10th Cir. 2014) .......... 12, 15

*Cincinnati Specialty Underwriters Inc. v. Red Rock 4 Wheelers*,
576 F.Supp.3d 905 (D. Utah 2021) .......... 12

*Fire Ins. Exchange v. Estate of Therkelsen*, 2001 UT 48, 27 P.3d 555 .......... 12

*Gomez v. American Elec. Power Serv. Corp.*,
726 F.2d 649 (10th Cir. 1984) .......... 11

*Hartford Cas. Ins. v. SoftwareMedia.com*, No. 2:10-CV-01098 BSJ,
2012 WL 965089 (D. Utah Mar. 20, 2012) .......... 14

*Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882 (10th Cir. 1991) .......... 14

*Nova Cas. Co. v. Able Const., Inc.*, 1999 UT 69, 983 P.2d 575 .......... 12

*Owners Ins. Co. v. Presidential Club Homeowners Assoc., Inc.*,
No. 2:20-CV-0594-TC, 2021 WL 514277 (D. Utah Feb. 11, 2021) .......... 12

*Sharon Steel Corp. v. Aetna Cas. and Sur. Co.*, 931 P.2d 127 (Utah 1997) .......... 16

*Trace Minerals Research, L.C. v. Mineral Resources Int'l, Inc.*,
505 F.Supp.2d 1233 (D. Utah 2007) .......... 11

*Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976 (10th Cir. 2002) .......... 11

*True Oil Co. v. Mid-Continent Cas. Co.*,
172 Fed.Appx. 645 (10th Cir. 2006) ........ 13

**Rules**

DUCivR 56-1 ........ 2

Fed. R. Civ. P. 36 ........ 13

Fed. R. Civ. P. 56 ........ 1, 2, 11

## INTRODUCTION AND RELIEF REQUESTED

This is an insurance coverage dispute wherein Plaintiff, The Phoenix Insurance Company ("Phoenix"), seeks, *inter alia*, a declaration that Defendant, Kinsale Insurance Company ("Kinsale"), has a duty to defend Gramoll Construction Company ("Gramoll") in connection with an underlying personal injury lawsuit, *Victor M. Romero v. Pinnacle Construction, Inc.*, *et al.*, pending in the Third Judicial District Court, Salt Lake County, under Case No. 210903647 (the "Underlying Action").

Phoenix issued a policy of insurance to Gramoll, who was retained by the University of Utah in connection with a construction project known as the Guest House Expansion. Kinsale issued a policy of insurance to Gramoll's carpentry subcontractor, Pinnacle Construction, Inc. ("Pinnacle"), which provides additional insured coverage on a blanket basis where required by written contract for liability "caused, in whole or in part, by" the acts or omissions of Pinnacle or those acting on Pinnacle's behalf.

In the Underlying Action, Victor M. Romero ("Claimant") alleges that while working at the project, a Pinnacle employee dropped a wooden beam from a second-story window above where Claimant was laying bricks, striking Claimant on the head and causing injuries. The Underlying Action includes claims sounding in negligence directly against Pinnacle.

Phoenix tendered to Kinsale on Gramoll's behalf for additional insured coverage both before and after the commencement of the Underlying Action, but Phoenix's tenders went largely unanswered. Because Kinsale's duty to defend was triggered by the underlying allegations, Kinsale must defend Gramoll in connection with the Underlying Action and reimburse Phoenix for the costs and fees already incurred, plus interest. The Court should, therefore, enter an Order, pursuant to Fed. R. Civ. P. 56:

(1) Declaring that (a) Kinsale has a duty to defend Gramoll in connection with the Underlying Action; (b) Kinsale's coverage obligations to Gramoll in connection with the Underlying Action are primary; and (c) Phoenix's coverage obligations are excess to those of Kinsale with respect to the Underlying Action;

(2) Granting an award in favor of Phoenix against Kinsale for all sums Phoenix has paid in defending Gramoll in the Underlying Action, plus interest;

(3) Scheduling an inquest on damages; and

(4) Granting such other and further relief as the Court deems just and proper.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Phoenix submits the following statement of undisputed material facts pursuant to Fed. R. Civ. P. 56(c) and DUCivR 56-1(b)(3):

### A. The Policies

1. Phoenix issued to Gramoll a policy of commercial insurance bearing policy number DT-CO-5P553336-PHX-20 with effective dates of March 1, 2020 to March 1, 2021 (the "Phoenix Policy"). *See* Appendix of Evidence ("Pl.'s App. of Evid."), **Ex. 3**.

2. Subject to its terms and conditions, the Phoenix Policy provides coverage for bodily injury that takes place during the policy period and is caused by an accident. *See* Pl.'s App. of Evid., **Ex. 3** at PHX000404.

3. The Phoenix Policy contains the following definitions:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section **II -** Who Is An Insured.

Pl.'s App. of Evid., **Ex. 3** at PHX000404.

4. The Phoenix Policy contains "other insurance" provisions that provide that coverage under the Phoenix Policy is excess over "[a]ny of the other insurance, whether primary,

excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance." Pl.'s App. of Evid., **Ex. 3** at PHX000418.

5. Defendant Kinsale issued to Pinnacle a policy of commercial general liability insurance bearing policy number 0100069742-1 with effective dates of July 9, 2019 to July 9, 2020 (the "Kinsale Policy"). *See* Pl.'s App. of Evid., **Ex. 4A**.

6. Subject to its terms and conditions, the Kinsale Policy provides coverage for bodily injury that takes place during the policy period and is caused by an accident. *See* Pl.'s App. of Evid., **Ex. 4A** at KINSALE000083.

7. The Kinsale Policy provides, in part, as follows:

> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

Pl.'s App. of Evid., **Ex. 4A** at KINSALE000083.

8. The Kinsale Policy contains the following definitions:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section **II -** Who Is An Insured.
>
> […]
>
> **SECTION V – DEFINITIONS**
>
> […]

> **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> […]
>
> **18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
> **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
> **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Pl.'s App. of Evid., **Ex. 4A** at KINSALE000083, 94-5, 97.

9. Pinnacle is the only Named Insured under the Kinsale Policy. *See* Pl.'s App. of Evid., **Ex. 4A** at KINSALE000079.

10. The Kinsale Policy contains endorsement CG 20 10 07 04, entitled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION" (the "Blanket Endorsement"), which provides, in part, as follows:

> **This endorsement modifies insurance provided under the following:**
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**

| **SCHEDULE** | |
|---|---|
| **Name of Additional Insured Person(s) or Organization(s):** | **Location(s) of Covered Operations** |
| Blanket, as required by written contract. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

> **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

Pl.'s App. of Evid., **Ex. 4A** at KINSALE000144.

11. The Kinsale Policy provides, with respect to "other insurance," in part, as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Pl.'s App. of Evid., **Ex. 4A** at KINSALE000093.

12. The Kinsale Policy contains endorsement CAS5003 0717, entitled "ADDITIONAL INSURED – PRIMARY AND NON-CONTRIBUTORY ENDORSEMENT" (the "Priority Endorsement"), which provides, in part, as follows:

> The insurance provided to Additional Insureds shall be excess with respect to any other valid and collectible insurance available to the Additional Insured unless the written contract specifically requires that this insurance apply on a primary and non-contributory basis, in which case this insurance shall be primary and non-contributory.

Pl.'s App. of Evid., **Ex. 4A** at KINSALE000140.

**B. <u>The Subcontract</u>**

13. Gramoll, as "Contractor," and Pinnacle, as "Subcontractor", entered into No. 67011 Subcontract Agreement dated December 17, 2018 (the "Subcontract") for Pinnacle to perform certain work in connection with the Guest House Expansion project at the University of Utah. *See* Pl.'s App. of Evid., **Ex. 4B**.

14. The Subcontract defines Pinnacle's scope of work as follows:

> **1.1 Scope of Work.** Subcontractor shall furnish all labor, materials, permits, tools, machinery, equipment, facilities, supplies and services, pay all applicable taxes, and comply with any and all additional requirements imposed by the jurisdiction in which the work is performed, and to do all things necessary to complete the following items of work under the General Contract (the "Work"):
>
> **Furnish all labor, materials, equipment and supervision required to complete all WOOD FRAMING work required, as described in specifications sections 061000 – ROUGH CARPENTRY; 061713 LAMINATED VENEER LUMBER; 061733 – WOOD I-JOISTS; 064300 – WOOD STAIRS and as shown in the drawings in BID PACKAGE #3 and comply with all other sections of the specifications and the drawings dated AUGUST 28, 2018, for GUEST HOUSE EXPANSION prepared by JACOBY ARCHITECTS, as related to such work.**

Pl.'s App. of Evid., **Ex. 4B**, p. 1.

15. Article VIII of the Subcontract provides, in part, as follows:

**8.1 Insurance.** Unless otherwise specified in the Subcontract Documents indicating that insurance shall be provided pursuant to an owner-controlled or contractor-controlled insurance program, Subcontractor shall purchase and maintain the following insurance coverages for itself for itself and the Additional Insureds during the course of the Work and during the Warranty Period, and shall maintain completed operations coverage for itself and the Additional Insureds for the length of time necessary to cover any manifestation date within the applicable statutes of limitations and/ or repose which pertain to the Work. If additional insurance coverage or greater limits of liability are required by the General Contract Documents, such provisions shall control.

8.1.1 **Commercial General Liability** coverage on an occurrence basis with a deductible not to exceed $1,000 per occurrence that includes coverage for liability assumed under any oral or written contract relating to the conduct of Subcontractors' business, including this Subcontract, and also including (1) broad form property damage liability coverage; (2) premises-operations coverage; (3) explosion and collapse hazard coverage; (4) underground hazard; (5) products and completed operations hazard coverage, and (6) independent contractor coverage. The limit of liability shall be not less than $1,000,000 each occurrence, $2,000,000 general aggregate (subject to a per project general aggregate provision applicable to the project per ISO form CG 2503 or its equivalent), $2,000,000 products/completed operations aggregate and $1,000,000 personal and advertising injury.

[…]

The liability insurance policies, including commercial general liability, automobile liability and excess liability, shall be endorsed to provide: (1) that Contractor and Owner are additional insureds (the "Additional Insureds'') per ISO form CG 20 10 07 04 and CG 20 37 07 04 or their equivalent, (2) that the insurance afforded by the policies shall apply to Contractor as though a separate policy had been issued to Contractor, and (3) that the coverage afforded to Contractor is primary and any other insurance in force for Contractor will be excess and will not contribute to the primary policies. All required insurance shall be provided by insurance companies with a rating of A- VII or better by A.M. Best Company.

Prior to performing any Work, Subcontractor shall provide Contractor with a certificate of insurance demonstrating that Subcontractor has obtained all of the insurance coverages required by this Section. An additional insured endorsement shall be attached to such certificate of insurance. The certificate of insurance and the insurance policies effectuating coverages

> required by this Section shall contain a provision that coverage afforded under the policies will not be canceled or allowed to expire until at least 30 days prior written notice has been given to Contractor.

Pl.'s App. of Evid., **Ex. 4B**, pp. 7-8.

16. Pursuant to the Subcontract, Pinnacle produced Certificates of Liability Insurance dated March 12, 2019 and February 11, 2020 with policy endorsements (the "COIs") to Gramoll. *See* Pl.'s App. of Evid., **Ex. 5**.

17. The COIs identified the Kinsale Policy as Pinnacle's general liability insurance from July 9, 2019 to July 9, 2020. *See* Pl.'s App. of Evid., **Ex. 5** at 001.

**C. <u>The Incident and Underlying Action</u>**

18. Claimant alleges he was injured on March 13, 2020 when he was struck by a wood beam while laying brick at a construction project located at the University of Utah Guest House. *See* Pl.'s App. of Evid., **Ex. 6** at ¶¶ 5, 11, 15, 17.

19. Prior to November 28, 2022, Claimant filed a lawsuit against Pinnacle in the Third Judicial District Court, Salt Lake County, under Case No. 210903647 (the "Underlying Action"), seeking damages as a result of Claimant's alleged accident. *See* Pl.'s App. of Evid., **Ex. 6** at KINSALE000737.

20. On or about November 28, 2022, Claimant filed an Amended Complaint (the "Underlying Amended Complaint") adding Gramoll as a defendant in the Underlying Action. *See* Pl.'s App. of Evid., **Ex. 6**.

21. In the Underlying Action, Claimant alleges that as he was laying brick on the outside of the Guest House, a Pinnacle employee was installing a wood beam in an open window above where Claimant was working when the wood beam fell, striking Claimant on the head. *See* Pl.'s App. of Evid., **Ex. 6** at ¶¶ 14-7.

22. In the Underlying Action, Claimant alleges causes of action sounding in negligence against Pinnacle and Gramoll. *See generally* Pl.'s App. of Evid., **Ex. 6**.

23. Fact discovery in the Underlying Action is complete, and expert discovery is underway. *See* Pl.'s App. of Evid., **Ex. 1** at ¶ 9.

**D. Tenders to Kinsale**

24. By correspondence dated April 16, 2020, Phoenix notified Pinnacle of Claimant's claim and reminded Pinnacle of its obligations under the Subcontract. *See* Pl.'s App. of Evid., **Ex. 7** at KINSALE000633-4.

25. By correspondence dated June 3, 2020, Kinsale acknowledged receipt of Phoenix's April 16, 2020 correspondence and responded, in part, as follows:

> As an initial matter, no lawsuit has been filed, therefore, your tender is premature. Additionally, there is no evidence Mr. Romero's injuries arise out of the acts or omissions of Pinnacle. Should a lawsuit be filed, please promptly forward it to the undersigned for our review and we will respond to you accordingly under separate cover.

Pl.'s App. of Evid., **Ex. 8** at KINSALE000653.

26. By correspondence dated November 29, 2022, Phoenix timely demanded that Kinsale defend and indemnify Gramoll as an additional insured in connection with the Underlying Action. *See* Pl.'s App. of Evid., **Ex. 9**.

27. By correspondence dated February 21, 2023, Phoenix re-tendered the defense and indemnity of Gramoll to Kinsale in connection with the Underlying Action. *See* Pl.'s App. of Evid., **Ex. 10** at KINSALE000712-3.

28. By correspondence dated March 8, 2023, Phoenix requested a response to its tenders from Kinsale. *See* Pl.'s App. of Evid., **Ex. 10** at KINSALE000711.

29. By correspondence dated May 25, 2023, Phoenix requested a response to its tenders from Kinsale. *See* Pl.'s App. of Evid., **Ex. 11** at KINSALE000731.

30. By correspondence dated June 27, 2023, Kinsale responded, in part, as follows:

> Upon review of the documentation and tender letter regarding the above captioned matter we will be denying the tender to Kinsale for defense and indemnification of Gramoll. A formal letter is forthcoming outlining our position.

Pl.'s App. of Evid., **Ex. 12**.

31. By correspondence dated July 11, 2023, Phoenix requested Kinsale's formal response to Phoenix's tenders. *See* Pl.'s App. of Evid., **Ex. 13**.

32. By correspondence dated September 1, 2023, Phoenix re-tendered the defense and indemnity of Gramoll to Kinsale in connection with the Underlying Action. *See* Pl.'s App. of Evid., **Ex. 14**.

33. By correspondence dated September 13, 2023, Phoenix requested a response to its tenders from Kinsale. *See* Pl.'s App. of Evid., **Ex. 15**.

34. By correspondence dated March 18, 2024, Gramoll's defense counsel requested a response to Phoenix's tenders from Pinnacle's defense counsel. *See* Pl.'s App. of Evid., **Ex. 16**.

35. By correspondence dated June 3, 2024, Phoenix re-tendered the defense and indemnity of Gramoll to Kinsale in connection with the Underlying Action. *See* Pl.'s App. of Evid., **Ex. 17**.

36. By correspondence dated July 11, 2024, Phoenix informed Kinsale that suit would be filed against Kinsale due to its failure to respond to Phoenix's tenders. *See* Pl.'s App. of Evid., **Ex. 18**.

37. Kinsale has not assumed or contributed to the defense of Gramoll in the Underlying Action. *See* Pl.'s App. of Evid., **Ex. 1** at ¶ 10.

38. Phoenix has been providing and continues to provide a defense to Gramoll in the Underlying Action. *See* Pl.'s App. of Evid., **Ex. 1** at ¶¶ 2, 7.

39. Phoenix has incurred and continues to incur costs associated with the defense of Gramoll in the Underlying Action. *See* Pl.'s App. of Evid., **Ex. 1** at ¶ 8.

40. As of July 10, 2025, Phoenix incurred costs associated with the defense of Gramoll in the Underlying Action totaling approximately $30,149.25. *See* Pl.'s App. of Evid., **Ex. 1** at ¶ 8.

## LEGAL STANDARD

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In our circuit, '[t]he moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment.'" *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (internal citation omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court will "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal citation omitted). "In Utah, a court may enter summary judgment on the issue of contract interpretation if the language of the contract is unambiguous." *Trace Minerals Research, L.C. v. Mineral Resources Int'l, Inc.*, 505 F.Supp.2d 1233, 1239 (D. Utah 2007) (citing *Gomez v. American Elec. Power Serv. Corp.*, 726 F.2d 649, 651 (10th Cir. 1984)).

**B. Duty to Defend**

Utah law recognizes a "broad duty to defend [which] is triggered when 'the allegations in the underlying complaint … if proved, could result in liability under the policy.'" *Cincinnati Ins. Co. v. AMSCO Windows*, 921 F.Supp.2d 1226, 1236 (D. Utah 2013) (quoting *Nova Cas. Co. v. Able Const., Inc.*, 1999 UT 69, ¶ 8, 983 P.2d 575, 578), *aff'd*, 593 F. App'x 802 (10th Cir. 2014). As opposed to the duty to indemnify, the duty to defend "arises if there is potential, not actual, liability." *AMSCO Windows*, 921 F.Supp.2d at 1236; *see also Owners Ins. Co. v. Presidential Club Homeowners Assoc., Inc.*, No. 2:20-CV-0594-TC, 2021 WL 514277 at *3 (D. Utah Feb. 11, 2021) ("The duty to defend applies where the complaint against the insured contains any allegations or claims 'that might fall within the ambit of the policy'" (quoting *Chapman Constr., LC v. Cincinnati Ins. Co.*, No. 2:15-CV-172-DB, 2015 WL 12030093 at *2 (D. Utah Sept. 22, 2015))). "Where factual questions render coverage uncertain, … the insurer must defend until those uncertainties can be resolved against coverage." *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 22, 140 P.3d 1210, 1215. To negate the duty to defend, an insurer must demonstrate that none of the underlying claims are potentially covered by the policy. *See Cincinnati Specialty Underwriters Inc. v. Red Rock 4 Wheelers*, 576 F.Supp.3d 905, 913 (D. Utah 2021).

"An insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations of the complaint." *Benjamin*, 140 P.3d at 1214 (internal quotation marks and citation omitted). "The test is whether the complaint alleges a risk within the coverage of the policy." *AMSCO Windows*, 921 F.Supp.2d at 1237 (internal citations omitted). Any ambiguity as to the insurer's duty to defend must be construed in favor of the insured. *See Fire Ins. Exchange v. Estate of Therkelsen*, 2001 UT 48, ¶ 23 n.5, 27 P.3d 555, 561 n.5; *see also Allegis Inv. Servs., LLC v. Arthur J. Gallagher & Co.*, 371 F.Supp.3d 983, 994 (D. Utah 2019).

## ARGUMENT

### I. GRAMOLL QUALIFIES AS AN ADDITIONAL INSURED UNDER THE KINSALE POLICY

In order for Kinsale to be obligated to defend Gramoll with respect to the Underlying Action, it must first be established that Gramoll is entitled to coverage under the Kinsale Policy. The Kinsale Policy contains the Blanket Endorsement, which affords coverage to additional insured persons or organizations on a blanket basis[1] "as required by written contract." Pl.'s App. of Evid., **Ex. 4A** at KINSALE000144. Therefore, to qualify for coverage under the Blanket Endorsement, a written contract must require that Gramoll be included as an additional insured under Pinnacle's commercial general liability insurance.

It is undisputed that Pinnacle entered into the Subcontract with Gramoll to perform work at the Guest House Expansion project. *See* Pl.'s App. of Evid., **Ex. 4B**, p. 1; *see also* Pl.'s App. of Evid., **Ex. 2** at ¶¶ 3, 5-6.[2] The Subcontract required Pinnacle to "purchase and maintain … insurance coverages for itself for itself and the Additional Insureds during the course of the Work…," including commercial general liability coverage. *See* Pl.'s App. of Evid., **Ex. 4B**, pp. 7-8. The Subcontract defined "Additional Insureds" as the "Contractor [Gramoll] and Owner[.]" *Id.*, p. 8.

---

[1] "Blanket endorsements are added to policies as a way to automatically provide coverage for companies with whom the named insured does business without having to execute additional contracts and without having to name the additional insured explicitly in the policy." *True Oil Co. v. Mid-Continent Cas. Co.*, 172 Fed.Appx. 645, 649 n.3 (10th Cir. 2006).

[2] By not responding to Plaintiff's First Set of Requests for Admission to Defendant (the "Requests for Admission"), Kinsale admitted all matters asserted therein, including the completeness and accuracy of the Subcontract. *See* Fed. R. Civ. P. 36(a)(3); *see also* Pl.'s App. of Evid., **Ex. 2** at ¶¶ 4-5.

The Subcontract further required Pinnacle to provide Gramoll with a certificate of insurance demonstrating compliance with these insurance procurement obligations prior to starting work at the project. *See* Pl.'s App. of Evid., **Ex. 4B**, p. 8. In accordance with this obligation, Pinnacle produced the COIs to Gramoll. *See* Pl.'s App. of Evid., **Ex. 5**. The COIs identify the Kinsale Policy as Pinnacle's general liability insurance in effect on the date of Claimant's alleged accident. *See id.*; Pl.'s App. of Evid., **Ex. 6** at ¶ 5.

The Subcontract constitutes a written contract that required Gramoll to be included as an additional insured under Pinnacle's insurance. Pinnacle expressly consented to these terms not only by executing the Subcontract but by producing the COIs to Gramoll. *See, e.g., Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 889 (10th Cir. 1991). As such, the Blanket Endorsement's criteria are satisfied and Gramoll qualifies as an additional insured under the Kinsale Policy.

## II. KINSALE HAS A DUTY TO DEFEND BECAUSE THE UNDERLYING ACTION ASSERTS LIABILITY COVERED BY THE KINSALE POLICY

Because Gramoll is an additional insured, Kinsale has "the right and duty to defend the insured [Gramoll] against any 'suit' seeking [covered] damages." Pl.'s App. of Evid., **Ex. 4A** at KINSALE000083. Thus, Kinsale's duty to defend Gramoll is triggered if specific allegations pleaded in the Underlying Action assert liability covered by the terms of the Kinsale Policy. *See Hartford Cas. Ins. v. SoftwareMedia.com*, No. 2:10-CV-01098 BSJ, 2012 WL 965089 at *7 (D. Utah Mar. 20, 2012).

The Underlying Action unquestionably alleges liability covered by the Kinsale Policy. The Kinsale Policy generally provides coverage for bodily injury caused by an accident that takes place during the policy period. *See* Pl.'s App. of Evid., **Ex. 4A** at KINSALE000083. The Blanket Endorsement that affords coverage to Gramoll covers liability for bodily injury that is "caused, in

whole or in part, by" the acts or omissions of Pinnacle or those acting on its behalf. *See id*. at KINSALE000144.

Claimant alleges in the Underlying Action that he was caused to sustain injuries when he was struck by a wood beam as he was laying brick at the project. *See* Pl.'s App. of Evid., **Ex. 4** at ¶¶ 5, 11, 15, 17. Particularly, Claimant alleges that the wood beam that fell onto his head was dropped from a second-story window by a Pinnacle employee. *See id*. at ¶¶ 14-7. Most notably, Claimant alleges causes of action sounding in negligence directly against Pinnacle. *See* Pl.'s App. of Evid., **Ex. 4**. If proven, these allegations would result in liability under the Kinsale Policy caused, at least in part, by Pinnacle's acts or omissions. *See AMSCO Windows*, 921 F.Supp.2d at 1236. The fact that Pinnacle's liability for Claimant's alleged damages remains prospective is immaterial to Kinsale's duty to defend. *See id*. The plain language of the Kinsale Policy obligates Kinsale to defend its insureds against "**any** 'suit' seeking [covered] damages." Pl.'s App. of Evid., **Ex. 4A** at KINSALE000083 (emphasis added).

Kinsale has a duty to defend Gramoll, and thus must reimburse Phoenix for all costs and fees incurred to date, because the allegations set forth in the Underlying Action assert liability which is covered by the Kinsale Policy. Gramoll is entitled to coverage as an additional insured under the Kinsale Policy for liability caused, in whole or in part, by Pinnacle's acts or omissions. *See* Pl.'s App. of Evid., **Ex. 4A** at KINSALE000144. In the Underlying Action, Claimant alleges that he was struck by Pinnacle's wood beam which allegedly had been dropped by Pinnacle's employee. *See* Pl.'s App. of Evid., **Ex. 4** at ¶¶ 14-7. Because these allegations, if proved, would yield liability under the Kinsale Policy, Kinsale has a duty to defend Gramoll in the Underlying Action.

## III. THE COVERAGE PROVIDED BY THE PHOENIX POLICY IS EXCESS TO THE COVERAGE PROVIDED BY THE KINSALE POLICY

"When allocating liability among insurers, courts look to the policies' other-insurance clauses." *Associated Elec. & Gas Ins. Servs. Ltd. v. American Int'l Group, Inc.*, 166 F.Supp.3d 1248, 1257 (D. Utah 2015). The Kinsale Policy's "other insurance" clauses provide that the coverage afforded under the policy is primary absent one of five specifically articulated exceptions. *See* Pl.'s App. of Evid., **Ex. 4A** at KINSALE000093. None of those exceptions apply here.[3] Moreover, the Kinsale Policy contains the Priority Endorsement, which provides that coverage afforded to an additional insured will be primary to other insurance available to the additional insured so long as Pinnacle has agreed in writing to provide such coverage. *See id*. at KINSALE000140. Pinnacle agreed in writing, in the Subcontract, to provide primary and non-contributory coverage to Gramoll, as Contractor. *See* Pl.'s App. of Evid., **Ex. 4B**, pp. 7-8. As such, the qualifications under the Priority Endorsement are satisfied, and the Kinsale Policy's coverage to Gramoll is primary.

By contrast, the Phoenix Policy contains "other insurance" provisions that provide that coverage under the Phoenix Policy is excess over "[a]ny of the other insurance, […] that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance." Pl.'s App. of Evid., **Ex. 3** at PHX000418. Since Gramoll is entitled to coverage as an additional insured under the Kinsale Policy, the Phoenix Policy is rendered excess. Accordingly, Kinsale's coverage obligations are

[3] The Kinsale Policy provides that its coverage is excess over (1) certain coverage for Pinnacle's work, (2) fire insurance for premises rented or occupied by Pinnacle, (3) coverage for property damage to premises rented or occupied by Pinnacle, (4) coverage for losses arising out of certain motorized vehicles and aircraft, and (5) other liability insurance available to Pinnacle. *See* Pl.'s App. of Evid., **Ex. 2A** at KINSALE000093. These exceptions to primary coverage are specific to Pinnacle and, therefore, do not apply to additional insureds like Gramoll.

primary, and Phoenix is entitled to reimbursement of the costs and fees incurred in defending Gramoll in the Underlying Action. *See Sharon Steel Corp. v. Aetna Cas. and Sur. Co.*, 931 P.2d 127, 139 (Utah 1997).

**CONCLUSION**

For the reasons set forth herein, this Court should grant summary judgment in favor of Phoenix, entering an Order declaring that: (a) Kinsale has a duty to defend Gramoll in the Underlying Action; (b) Kinsale's coverage obligations to Gramoll in the Underlying Action are primary; and (c) Phoenix's coverage obligations are excess to those of Kinsale with respect to the Underlying Action; granting an award in Phoenix's favor against Kinsale for all sums Phoenix has paid in defending Gramoll in the Underlying Action, plus interest; and scheduling an inquest on damages.

Dated: New York, New York
July 10, 2025

USERY & ASSOCIATES

/s/Lisa Szczepanski

By: Lisa Szczepanski
485 Lexington Ave., 6th Fl.
New York, NY 10017
Mailing Address:
P.O. Box 2996
Hartford, CT 06104
T. (917) 778-6680
F. (844) 571-3789
E. lszczepa@travelers.com

RAY LEGO & ASSOCIATES
Taylor A. Affleck
1100 East 6600 S., Ste. 350
Salt Lake City, UT 84121
T. (801) 269-5639
F. (801) 269-5641
E. taffleck@travelers.com

*Attorneys for The Phoenix Insurance Company*

**DUCivR 7-1 CERTIFICATION**

I, Lisa Szczepanski, by signature below, hereby certify that the forgoing **Motion for Summary Judgment dated July 10, 2025** contains 5,113 words and complies with DUCivR 7-1(a)(4)(B).

This certification is made in reliance on the word count of the word-processing system used to prepare the aforementioned document.

Dated: New York, New York
July 10, 2025

USERY & ASSOCIATES

/s/Lisa Szczepanski

By: Lisa Szczepanski
485 Lexington Ave., 6th Fl.
New York, NY 10017
Mailing Address:
P.O. Box 2996
Hartford, CT 06104
T. (917) 778-6680
F. (844) 571-3789
E. lszczepa@travelers.com

RAY LEGO & ASSOCIATES
Taylor A. Affleck
1100 East 6600 S., Ste. 350
Salt Lake City, UT 84121
T. (801) 269-5639
F. (801) 269-5641
E. taffleck@travelers.com

*Attorneys for The Phoenix Insurance Company*