THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>KINSALE INSURANCE COMPANY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [29] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:24-cv-00688-DBB-DAO<br><br>District Judge David Barlow |

Before the court is Plaintiff The Phoenix Insurance Company's ("Phoenix") Motion for Summary Judgment[1] against Defendant Kinsale Insurance Company ("Kinsale").

## BACKGROUND

Phoenix issued an insurance policy[2] to Gramoll Construction Company ("Gramoll").[3] Gramoll was retained by the University of Utah as a contractor to work on a construction project (the "Project").[4] In furtherance of the Project, Gramoll signed a contract with subcontractor Pinnacle Construction, Inc. ("Pinnacle")[5] that, in part, requires Pinnacle to obtain liability insurance that includes Gramoll as an additional insured.[6] Pinnacle obtained such a policy from Kinsale.[7] In March 2020, while working on the Project, a Pinnacle employee allegedly dropped a

---

[1] Plaintiff's Mot. for Summary Judgment ("MSJ"), ECF No. 29, filed July 10, 2025.
[2] Phoenix Policy, ECF No. 29-4.
[3] MSJ 1.
[4] *Id.*
[5] Subcontract, ECF No. 29-7.
[6] *Id.* at 7–8.
[7] Kinsale Policy, ECF No. 29-6.

1

wooden beam from a window, injuring a man named Victor M. Romero.[8] Mr. Romero filed a lawsuit against Pinnacle, and in November 2022, he amended his complaint to include Gramoll as a defendant.[9] Pursuant to its policy, Phoenix is defending Gramoll in the lawsuit, but it contends that Kinsale has a primary obligation to defend Gramoll in the lawsuit as an additional insured under the Kinsale Policy.[10] Phoenix demanded several times that Kinsale defend Gramoll under the Kinsale Policy,[11] but Kinsale ultimately denied the tender of defense.[12] Phoenix now asks the court to declare that Kinsale has a duty to defend Gramoll in the lawsuit and to award Phoenix the costs that it has incurred in defending Gramoll thus far.[13]

## STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[15] The movant "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[16] When viewing the record, the court "draw[s] all reasonable inferences therefrom most favorably to the nonmovant."[17]

---

[8] MSJ 1.
[9] Amended Compl. ("Underlying Compl."), ECF No. 29-9.
[10] MSJ 1–2.
[11] *Id.* at 9–10; Opposition to Pl. Mot. for Summary Judgment ("Opp'n") 3–4, ECF No. 33, filed Aug. 14, 2025.
[12] Correspondence June 27, 2023 ("Second Tender Denial"), ECF No. 29-15.
[13] MSJ 1–2.
[14] Fed. R. Civ. P. 56(a).
[15] *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1169 (10th Cir. 2021) (citation omitted).
[16] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[17] *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (citation omitted).

## STATEMENT OF FACTS

**Phoenix Policy**

Phoenix issued an insurance policy listing Gramoll as the named insured that was in effect from March 1, 2020, to March 1, 2021.[18] The Phoenix Policy states that it is "primary insurance" except in specified situations.[19] One such exception explains that the Phoenix Policy is excess over:

> 4(b)(1)(b) Any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance.[20]

The Phoenix Policy further states:

> 4(b)(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.[21]

**Subcontract**

On December 17, 2018, Gramoll and Pinnacle entered into a subcontract agreement in which Gramoll is the contractor and Pinnacle is a subcontractor for work on the Project (the "Subcontract").[22] Under the Subcontract, Pinnacle would complete wood framing and carpentry work for the Project.[23] Article VIII of the Subcontract includes certain insurance requirements.[24] Sections 8.1 and 8.1.1 provide that "Subcontractor shall purchase and maintain" commercial

---

[18] Phoenix Policy 2.
[19] *Id.* at 104.
[20] *Id.*
[21] *Id.*
[22] Subcontract 1.
[23] *Id.*
[24] *Id.* at 7–8.

general liability insurance coverage "for itself and the Additional Insureds during the course of the Work."[25] The Subcontract also states:

> The liability insurance policies, including commercial general liability, automobile liability and excess liability, shall be endorsed to provide: (1) that Contractor and Owner are additional insureds (the "Additional Insureds") per ISO form CG 20 10 07 04 and CG 20 37 07 04 or their equivalent, (2) that the insurance afforded by the policies shall apply to Contractor as though a separate policy had been issued to Contractor, and (3) that the coverage afforded to Contractor is primary and any other insurance in force for Contractor will be excess and will not contribute to the primary policies. . . .
>
> Prior to performing any Work, Subcontractor shall provide Contractor with a certificate of insurance demonstrating that Subcontractor has obtained all of the insurance coverages required by this Section. An additional insured endorsement shall be attached to such certificate of insurance. . . .[26]

Pursuant to the Subcontract, Pinnacle provided Gramoll with a certificate of insurance that identifies the Kinsale Policy as issuing conforming commercial general liability insurance during the period from July 9, 2019, through July 9, 2020.[27]

Additionally, the subcontract contains an indemnity clause that provides in part that "Subcontractor shall indemnify and hold harmless Contractor, Owner, the project architects and engineers, and all of their respective agents and employees (the Indemnitees) from and against all claims, damages, losses and expenses" arising out of specified claims.[28] The indemnity clause also requires the subcontractor to "defend any claim for Losses against an Indemnitee."[29]

---

[25] *Id.*
[26] *Id.* at 8.
[27] Certificate of Liability Insurance ("COI") 1, ECF No. 29-8.
[28] Subcontract 7.
[29] *Id.*

**Kinsale Policy**

The Kinsale Policy lists Pinnacle as the only named insured.[30] It states that Kinsale has a "duty to defend the insured against any suit" seeking damages to which the policy applies and defines "insured" as "any person or organization qualifying as such under Section II — Who Is An Insured."[31] The Kinsale Policy also includes an endorsement that amends "Section II — Who Is An Insured" to include a "[b]lanket, as required by written contract" provision to describe additional insureds.[32] The endorsement limits coverage for any contractually required additional insureds to liability caused at least in part by Pinnacle or someone acting on Pinnacle's behalf.[33] Another endorsement states:

> The insurance provided to Additional Insureds shall be excess with respect to any other valid and collectible insurance available to the Additional Insured unless the written contract specifically requires that this insurance apply on a primary and non-contributory basis, in which case this insurance shall be primary and non-contributory.[34]

**Underlying Complaint**

On March 13, 2020, while working on the Project, a Pinnacle employee allegedly dropped a wooden beam from an open window, where it struck Mr. Victor Romero on the head.[35] After the incident, Mr. Romero filed a complaint in the Third Judicial District in Salt Lake County against Pinnacle.[36] The complaint was subsequently amended to add Gramoll as a

---

[30] Kinsale Policy 1.
[31] *Id.* at 5.
[32] *Id.* at 66.
[33] *Id.*
[34] *Id.* at 62.
[35] Underlying Compl. 5–6.
[36] *Id.* at 1.

Defendant.[37] In the complaint, Mr. Romero alleges negligence and agency-based claims against Pinnacle and Gramoll.[38]

**Tender of Defense**

On April 16, 2020, shortly after the incident, Phoenix sent a communication to Pinnacle acknowledging the accident and reminding Pinnacle of the indemnification and additional insured clauses in the Subcontract agreement.[39] Kinsale responded on behalf of Pinnacle on June 3, 2020, stating that the tender was "premature" because no lawsuit had been filed.[40]

On November 29, 2022, Phoenix sent an email to Kinsale again tendering the defense of Gramoll.[41] This tender included a copy of the underlying complaint with Gramoll as a defendant and requested defense based on both the Subcontract indemnity clause and Gramoll's status as an additional insured.[42] Phoenix received no official response and re-sent the same demand in another email sent on February 21, 2023.[43] On March 8, 2023, Phoenix requested a response to its tender along with a coverage determination.[44] Phoenix again requested a response on May 25, 2023.[45]

Kinsale responded on June 27, 2023, in an email denying the tender.[46] The email gave no reason for the denial but stated, "[a] formal letter is forthcoming outlining our position."[47] Between July 11, 2023, and September 13, 2023, Phoenix sent three additional emails following

---

[37] *Id.*
[38] *Id.* at 7–8.
[39] Correspondence May 22, 2020 ("First Tender"), ECF No. 29-10.
[40] Correspondence June 3, 2020 ("First Tender Denial"), ECF No. 29-11.
[41] Correspondence November 29, 2022 ("Second Tender"), ECF No. 29-12.
[42] *Id.* at 4, 13.
[43] Correspondence March 8, 2023 ("Second Tender Follow Up") 2, ECF No. 29-13.
[44] *Id.* at 1.
[45] Correspondence May 25, 2023, ECF No. 29-14.
[46] Second Tender Denial 1.
[47] *Id.*

6

up on the denial and requesting a written response.[48] Each follow up email referenced Phoenix's position that Gramoll was an additional insured under the Kinsale Policy.[49]

On June 3, 2024, Phoenix sent Kinsale another letter noting that it had never received a formal denial of its earlier tenders.[50] The letter made another official tender of defense to Kinsale, this time solely on the grounds that Gramoll is an additional insured under the Kinsale Policy with no reference to the Subcontract indemnity provision.[51] Kinsale did not respond, and Phoenix notified Kinsale that it would be filing suit in a July 3, 2024, email.[52]

## DISCUSSION

Phoenix argues that Gramoll qualifies as an additional insured under the plain language of the Kinsale Policy and the Subcontract and that Kinsale is contractually obligated to defend Gramoll in the lawsuit.[53] Phoenix also contends that the Phoenix Policy is excess to the Kinsale Policy coverage regarding defense obligations in the lawsuit, so Phoenix is entitled to reimbursement for what it has already spent to defend Gramoll.[54] Kinsale does not seem to dispute that Gramoll qualifies as an additional insured under the endorsement or that the claims alleged in the underlying lawsuit would trigger Kinsale's duty to defend.[55] Instead, Kinsale argues that the indemnity and additional insured provisions are "void and unenforceable" under

---

[48] Correspondence July 11, 2023 ("Denial Follow Up One"), ECF No. 29-16; Correspondence September 1, 2023 ("Denial Follow Up Two"), ECF No. 29-17; Correspondence September 13, 2023 ("Denial Follow Up Three"), ECF No. 29-18.
[49] *Id.*
[50] Correspondence June 3, 2024 ("Third Tender"), ECF No. 29-20.
[51] *Id.* at 2–3.
[52] Correspondence July 11, 2024 ("Notice of Suit"), ECF No. 29-21.
[53] MSJ 13–15.
[54] *Id.* at 16–17.
[55] *See* Opp'n.

Utah Code § 13-8-1[56] and that Phoenix's inclusion of the indemnity provision in its tenders made them improper for lack of "full information."[57]

**I.      Contractual Obligations**

Phoenix's primary argument is that the plain language of the relevant insurance policies and the Subcontract agreement creates a contractual duty for Kinsale to defend Gramoll in the underlying lawsuit.[58] In Utah, courts must focus on two documents when engaging in a duty-to-defend analysis, "the insurance policy and the complaint."[59] "[A]n insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the [underlying] complaint."[60] Here, the alleged injury forming the basis for the underlying lawsuit occurred within the coverage period listed in the Kinsale Policy.[61]

The Kinsale Policy states that Kinsale "will have the right and duty to defend the insured against any suit seeking" covered damages and defines an insured as anyone qualifying under "Section II – Who is an Insured."[62] The relevant provision of Section II is amended by an endorsement to provide blanket "additional insured" coverage as required by Pinnacle's written contracts.[63] It also limits additional insured coverage to liability for damages "caused, in whole or in part," by Pinnacle or someone acting on Pinnacle's behalf.[64] The Subcontract between Gramoll and Pinnacle requires "additional insured" status for Gramoll as the contractor.[65] The

---

[56] *Id.* at 2.
[57] *Id.* at 9.
[58] MSJ 1.
[59] *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 16, 140 P.3d 1210, 1214.
[60] *Fire Ins. Exch. v. Est. of Therkelsen*, 2001 UT 48, ¶ 21, 27 P.3d 555, 560.
[61] Kinsale Policy 1; Underlying Compl. 5.
[62] Kinsale Policy 5.
[63] *Id.* at 66.
[64] *Id.*
[65] Subcontract 8.

underlying complaint against Pinnacle and Gramoll makes negligence and respondeat superior claims based on damages allegedly caused by a Pinnacle employee within the scope of work for Pinnacle.[66] Thus, all of the Kinsale Policy's requirements for Gramoll to qualify as an additional insured are satisfied.

The Kinsale Policy also provides that its insurance to additional insureds "shall be excess" to other available policies unless the written contract specifies otherwise.[67] In this case, the Subcontract specifies that the insurance covering Gramoll as an additional insured must be primary.[68] Therefore, under the plain language of the Kinsale Policy, the Subcontract, and the underlying complaint, Gramoll is an "additional insured," and Kinsale has a contractual duty to defend Gramoll in the underlying suit as the primary insurance provider.

**II.     Utah Code § 13-8-1**

As discussed above, Kinsale has a contractual duty to defend Gramoll as an additional insured in the underlying action based on the plain language of the Kinsale Policy and the additional insureds endorsement. Kinsale does not argue that Gramoll does not qualify as an additional insured under the endorsement or that the underlying complaint does not seek covered damages under the policy.[69] Instead, Kinsale contends that "the indemnity provision and the relevant additional insured provision" in the Kinsale Policy are "void and unenforceable" under Utah Code § 13-8-1.[70]

---

[66] Underlying Compl. 7–8.
[67] Kinsale Policy 62.
[68] Subcontract 8.
[69] *See generally* Opp'n.
[70] *Id.* at 2.

9

Utah Code § 13-8-1 states, "[e]xcept as provided in Subsection (3), an indemnification provision in a construction contract is against public policy and is void and unenforceable."[71] Construction contracts are defined to include an "agreement relative to the design, construction, alteration, repair, or maintenance of a building" between a general contractor and a subcontractor.[72] In this case, the Subcontract qualifies as a construction contract under the statute because it relates to constructing a building and is between a contractor and subcontractor.[73] The question, then, is whether the statute voids the additional insureds provision that forms the basis of Phoenix's Complaint.[74] It does not.

Kinsale contends that "a plain and clear reading of the Code Section clearly shows" that the additional insured endorsement is "void and unenforceable."[75] Kinsale provides no further argument to support its claim that the additional insured provision qualifies as an indemnity clause that is statutorily prohibited in the Subcontract.[76] The statute defines an indemnification provision as "a covenant, promise, agreement or understanding in, in connection with, or collateral to a construction contract requiring the promisor to insure, hold harmless, indemnify, or defend the promisee or others against liability" that is caused by the indemnitee.[77] The relevant provision of the Subcontract requires Pinnacle as a subcontractor to "purchase and maintain" specified insurance "for itself and the Additional Insureds."[78] Notably, it does not

---

[71] Utah Code Ann. § 13-8-1(2).
[72] Utah Code Ann. § 13-8-1(1)(a).
[73] Subcontract 1.
[74] Complaint for Declaratory Relief ("Operative Compl.") 3–5, ECF No. 1-1, filed Sep. 19, 2024.
[75] Opp'n 2.
[76] *See generally id.*
[77] Utah Code Ann. § 13-8-1(1)(b).
[78] Subcontract 7–8.

require Pinnacle to personally insure or indemnify Gramoll, only purchase insurance that also covers Gramoll.[79]

The Utah Court of Appeals addressed this exact scenario in *Meadow Valley Contractors v. Transcontinental Insurance*.[80] There, the court analyzed an agreement between a general contractor and a subcontractor that required the subcontractor to purchase an insurance policy naming the general contractor as an additional insured.[81] The court held that § 13-8-1 only voids provisions that "require[] one party in a construction contract to personally insure against liability stemming from the other party's negligence."[82] Agreements requiring one party to purchase insurance naming another party as an additional insured do not violate § 13-8-1.[83] Therefore, the additional insured endorsement is not a prohibited indemnity provision under the statute.

Kinsale spends much of its Opposition arguing that the Subcontract's indemnity clause is void under § 13-8-1.[84] Because Phoenix only asserts claims based on the Gramoll's status as an additional insured,[85] the court need not decide whether the indemnity clause is void under the statute. However, even assuming that the indemnity clause is void under § 13-8-1, it would not affect the enforceability of the additional insured endorsement. The statute states that "an indemnification provision in a construction contract" is void, not that a construction contract

---

[79] *Id.*
[80] *Meadow Valley Contractors, Inc. v. Transcon. Ins. Co.*, 2001 UT App 190, ¶ 19, 27 P.3d 594, 598.
[81] *Id.* at 596.
[82] *Id.* at 598.
[83] *Id.*
[84] Opp'n 6–7.
[85] Operative Compl. 6–7.

containing an indemnification provision is void.[86] The Subcontract provision requiring Pinnacle to name Gramoll as an additional insured is enforceable.

### III. Sufficiency of Tenders

Finally, Kinsale argues that Phoenix's tenders of defense were improper because they "failed to provide full and fair information," and therefore could not trigger Kinsale's duty to defend.[87] Kinsale cites to no Utah caselaw for the proposition that a duty to defend is not triggered by tenders of defense that do not contain "full" information.[88] It relies primarily on a case applying Arizona law in which one insurer tendered a defense to another insurer but failed to respond to the second insurer's repeated requests for additional information.[89] But the case is not binding, and the facts here are different. Here, Phoenix made an official tender of defense on November 29, 2022, that included a copy of the underlying complaint, listed relevant facts, and expressly requested defense as an additional insured and under the indemnification clause.[90] Kinsale did not respond to this tender with a rejection until June 27, 2023,[91] and it never sent a formal letter outlining its reasons for the denial. Kinsale has not shown that at any point between the tender and the denial it requested additional information or indicated that it lacked necessary facts.

In fact, Kinsale's only basis for arguing that Phoenix's tenders were improper is that the tenders requested defense based on both the additional insured provision of the Kinsale Policy

---

[86] Utah Code Ann. § 13-8-1(2).
[87] Opp'n 8.
[88] *Id.* at 8–9.
[89] *Am. Fam. Mut. Ins. Co. v. Nat'l Fire & Marine Ins. Co*., No. CV07-2237-PHX-NVW, 2009 WL 2870202 (D. Ariz. Sept. 3, 2009).
[90] *See* Second Tender.
[91] *See* Second Tender Denial.

and the indemnity clause of the Subcontract.[92] These tenders allegedly did not provide full information because they failed to "disclos[e] the uncontested fact that the Anti-Indemnity Statute barred enforcement of the Indemnity Obligation."[93] Kinsale contends that Phoenix did not make a "full tender of the defense" (one based solely on the additional insured provision) until the June 3, 2024 tender, by which point so much time had passed that it would be unfair to hold Kinsale to its contractual obligations.[94]

This argument is incompatible with Utah law. "[A]n insurer 'may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage.'"[95] On the contrary, "if the underlying complaint alleges any facts or claims that might fall within the ambit of the policy, the insurer must offer a defense."[96] When an underlying lawsuit asserts both covered and non-covered claims, "the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage."[97]

In Phoenix's November 29, 2022, tender after the underlying suit had been filed, it included a full copy of the underlying complaint as well as a description of the relevant facts and an excerpt of the Subcontract provision requiring additional insured coverage.[98] As discussed above, the facts in the underlying complaint, the Subcontract, and the Kinsale Policy together

---

[92] Opp'n 8.
[93] *Id.* at 9.
[94] *Id.*
[95] *Summerhaze Co., L.C. v. Fed. Deposit Ins. Corp.*, 2014 UT 28, ¶ 38, 332 P.3d 908, 921 (quoting *Solo Cup Co. v. Fed. Ins. Co.*, 619 F.2d 1178, 1183 (7th Cir. 1980)).
[96] *Farm Bureau Mut. Ins. v. Weston*, 2023 UT App 136, ¶ 63, 540 P.3d 660, 683, cert. granted sub nom. *Farm Bureau v. Weston*, 550 P.3d 995 (Utah 2024).
[97] *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 25, 140 P.3d 1210, 1216.
[98] Second Tender.

demonstrate that Gramoll qualifies as an additional insured and is owed defense in the underlying lawsuit. This information was presented to Kinsale in the November 29, 2022, tender.[99] That Phoenix also asserted Kinsale's duty to defend based on the indemnification clause does not change the result. The additional insured provision is sufficient to create such a duty, so proposed alternative bases for the same duty in the tender do not remove Kinsale's obligation, even if the alternative provisions are not valid.

Furthermore, Kinsale does not explain why, if it lacked sufficient information to know that the indemnification clause was void, it did not accept Phoenix's tender based on the indemnification clause and the additional insured provision. Indeed, it appears no explanation was ever given for the denial. Even under the "full and fair information" standard referenced in Kinsale's Opposition, there is no logical basis for concluding that a tender that provides too much information—two bases for coverage instead of one—is improper while the same tender with fewer contractual excerpts would somehow be sufficient. As another court has noted, what is required to trigger a contractual duty to defend is "knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired."[100] Both were present here in the November 29, 2022, tender.[101]

Kinsale has a contractual duty to defend Gramoll in the underlying suit, in which Kinsale's insurance obligations are primary and Phoenix's insurance obligations are excess. Phoenix properly triggered this duty with its November 29, 2022, tender of defense.[102]

---

[99] *Id.*
[100] *Hartford Acc. & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir. 1985).
[101] *See* Second Tender.
[102] *Id.*

Accordingly, Kinsale must defend Gramoll in the ongoing underlying action and reimburse Phoenix for its costs in defending Gramoll in the action thus far.

## ORDER

Plaintiff's [29] Motion for Summary Judgment is GRANTED.

Signed October 22, 2025.

BY THE COURT

_____
David Barlow
United States District Judge